TRUSTEES OF CATSKILL BANK *vs.* ROBERT HOOPER & others.

A debt due from a partnership established in another state cannot, under the insolvent laws of this commonwealth, share in the estate of one of the partners who resides here in competition with his separate creditors.

A creditor, who brings an action in New York against two persons as partners doing business there, one of whom resides in this state and is not served with process, and recovers a judgment there against both, which, by the statutes of that state, is binding upon the person served and upon the joint property, cannot afterwards prove the debt against the estate of the absent defendant in proceedings under the insolvent laws of this commonwealth, commenced before the action was brought in New York, whether the two defendants in that action were partners or not.

APPEAL from a decree of the master in chancery in the matte_ of the estate of Horace Gray and Nathaniel Francis, insolvent debtors, of whom the appellees were the assignees. The parties submitted the case to the decision of the court upon a statement of facts, the material part of which was as follows :

Gray and Francis, from 1844 until the 24th of November 1847, when they petitioned for the benefit of the insolvent laws, were partners in Boston under the firm of Horace Gray & Co. whose principal business was to purchase supplies for, and sell iron manufactured at various iron works, in which neither the firm nor Francis had any interest. One of these establishments was the Ulster Iron Works at Saugerties in the county of Ulster and State of New York, of which Gray had a lease for years from the Ulster Iron Company, a corporation duly established by the laws of New York, at Saugerties, for the manufacture of iron. By that lease he covenanted to pay the corporation " as the rent of said demised premises," one fourth part of the net profits arising from the premises and the manufacture of iron thereon, after deducting all charges ; (excepting commissions on sales at New York, the lessee's personal services, and the general superintendence at Saugerties ;) one half. to be paid annually, and the balance at the end of the term, with interest thereon yearly added to the principal; it being agreed, however that the first five thousand dollars which would fall to the share of the corporation should be applied to the payment of certain

Trustees of Catskill Bank *v.* Hooper & others.

repairs, if made, which the lessee was authorized to make; and that any loss that might occur should be charged in profit and loss account, but the corporation should not be liable to repay any moneys previously received by them, nor be liable for any loss or deficiency at the end of the term.

William Burtt was employed by Gray as the general agent and superintendent of the Ulster Iron Works, and was paid by Gray an annual salary; and in 1847 made an arrangement with the Catskill Bank, a corporation established at Catskill, N. Y., which appears by the following correspondence: On the 30th of July 1847, Jeremiah Russell of Saugerties, in a letter to the cashier of the bank, said: " Ulster Iron Company (Horace Gray, of Boston, principal owner,) are doing a heavy business. They use $7,000 monthly for the expense of their establishment in manufacturing at this place, exclusive of stock. William Burtt, Esq., has for some time past got his funds from Boston, and finds it quite inconvenient, and would be glad to do his business through your bank." On the 7th of August, Burtt, in a letter signed as " Superintendent Ulster Iron Works," and addressed to the cashier, said : " On my return last evening from a journey, I found your letter of the 2d inst., addressed to Jeremiah Russell of this village, relative to furnishing us with an average monthly discount of seven thousand dollars, on four months' paper, for disbursement at these works. The paper proposed to be offered for discount would be in drafts at four months' date, drawn by the writer on the house of Horace Gray & Co., Boston." " P. S. I would remark that we require, in each month, about $120 in change, in making our payments, which, I suppose, would be convenient and agreeable to your bank to furnish." The bank agreed to the proposal, and on the 13th of August a letter signifying their assent was sent by the cashier to Burtt, and a copy thereof communicated by Burtt to Gray ; and Burtt on the next day delivered to the cashier a letter of credit from Horace Gray & Co. authorizing " William Burtt, Esq., superintendent of the Ulster Iron Works at Saugerties," to draw upon them. On the 19th of August 1847, Gray, in a letter to Burtt, approved of the arrangement with the Catskill Bank.

The bank, in September, October and November 1847, advanced to Burtt at different times, $19,500, less the discount, and Burtt delivered to the bank three drafts, alike in form, on Horace Gray & Co., to that amount, of one of which this is a copy: " $5000. Saugerties, N. Y., September 3d 1847. Four months after date, pay to the order of Mr. Wm. Burtt five thousand dollars, value received, which place to account of your ob't serv't,

To Messrs. Horace Gray & Co.        Wm. Burtt, Sup't.

       Boston.                Saugerties, N. Y."

All the sums so advanced were disbursed at the Ulster Iron Works, and the drafts were accepted by Horace Gray & Co. and charged in their books, with the knowledge and consent of Gray, to " Horace Gray, lessee of Ulster Iron Works." Payment of the drafts was duly demanded of the acceptors, and refused, and the drafts protested for nonpayment.

On the 3d of November 1848, the Catskill Bank commenced an action in the supreme court of the State of New York against the Ulster Iron Company and Gray as partners by reason of the lease before mentioned, to recover the amount of said advances. In that action, Gray was not served with process, and did not appear nor answer; but the Ulster Iron Company were served with process, and appeared and defended; and judgment was rendered against both defendants for the amount of the advances. *Catskill Bank* v. *Gray*, 14 Barb. 471. No part of that judgment has been satisfied. The published laws of the State of New York may be referred to by either party.

The master refused to allow either th⁀ drafts, or the consideration thereof, to be proved against the separate estate of Horace Gray.

This case was argued before that of *Bank of British North America* v. *Hooper, ante,* 567, was decided.

*R. Choate & H. Gray, Jr.* for the appellants. I. The debt offered for proof was a debt of Horace Gray, when it was con tracted.

(1.) The drafts, drawn by Burtt, as the agent of Gray, (who alone carried on the manufacture of iron at the Ulster Iron Works at Saugerties,) and disclosing such agency by the ad·

dition to his signature of the words " superintendent, Sauger-
ties, N. Y.," were binding on Gray as drawer, on proof that the
moneys loaned were applied to his use. *Brockway* v. *Allen,* 17
Wend. 40. *Mann* v. *Chandler,* 9 Mass. 335. *New England
Marine Ins. Co.* v. *De Wolf,* 8 Pick. 61. *Johnson* v. *Smith,* 21
Conn. 627. *Mechanics' Bank of Alexandria* v. *Bank of Colum-
bia,* 5 Wheat. 337. *Huntington* v. *Knox,* 7 Cush. 375. *Melledge*
v. *Boston Iron Co.* 5 Cush. 174. *Fuller* v. *Hooper,* 3 Gray, 334.

(2.) The facts of this case show, not a discount, or sale and
purchase of paper, but a loan and borrowing of money; and
Gray, if not liable on the drafts, was liable for the money loaned
to him through Burtt, and applied to his use and benefit. The
effect of receiving these drafts, on the right of recovery for the
original consideration, is to be determined by the law of New
York, where they were received; and by that law they are not
presumed to be payment, but an action would lie against Gray
for the money loaned. *Alcock* v. *Hopkins,* 6 Cush. 484. *Zer-
rano* v. *Wilson,* 8 Cush. 424. *Shiras* v. *Morris,* 8 Cow. 62.
*Pentz* v. *Stanton,* 10 Wend. 271. *Allen* v. *Coit,* 6 Hill, 318.
*Catskill Bank* v. *Gray,* 14 Barb. 471.

II. The debt in question was, at the time of its being offered
for proof, still outstanding against Gray, and should therefore
have been allowed against his estate.

(1.) Even by the law of New York, no service having been
made upon Gray in the action in that state, the cause of action
against him would still be the original debt, and not the judg-
ment. 2 Rev. Sts. of N. Y. (3d ed.) pt. 3, *c.* 6, tit. 6, art. 1. *Oak-
ley* v. *Aspinwall,* 4 Comst. 514. But a judgment in New York
has no binding force whatever on a defendant, whether sole or
joint, who was not served with process. *D'Arcy* v. *Ketchum,*
11 How. 165. *Gleason* v. *Dodd,* 4 Met. 333. All forms of rem-
edy, including the modes of enforcing judgments, are governed
exclusively by the law of the court in which they are sought to be
enforced. Story Confl. §§ 556–558, 567. *Bank of United States*
v. *Donnally,* 8 Pet. 373. *Le Roy* v. *Beard,* 8 How. 464. By the
law of Massachusetts, a judgment against several joint contract-
ors is binding on those only who were served with process, and

·does not bar a suit on the original cause of action against the others. Rev. Sts. *c.* 92, §§ 12, 13. And such a judgment .in another state can have no greater effect. *Shirley* v. *Shattuck,* ·13 Met. 260. To give the judgment in New York any greater effect would prevent the creditor from enforcing his claim in any form, out of that state, against the absent debtor or his prop-·erty ; for if a suit or claim were attempted here on that judg-ment, the plain answer would be that it was not binding on him or his assignees or other representatives, because he was not served with process.

(2.) Whatever place this debt should take, when the claims are marshalled, it must, in any event, be allowed to be proved against Gray's separate estate. *Barclay* v. *Phelps,* 4 Met. 397.

III. The debt in question is " a separate debt " of Gray, ·within the meaning of the insolvent law, and, as such, entitled to a dividend out of his separate estate, *pari passu* with his other separate debts.

(1.) The provision of the insolvent law, for the marshalling ·of the assets of a partnership between their joint and separate creditors, applies only to " persons who are partners in trade," that is, between themselves and as to all the world, and not to persons who, not being actually partners, have incurred the lia-bilities of partners to third persons ; and debts, for which several individuals, not partners *inter sese,* are liable as partners, are therefore to be considered as separate debts of each. *St.* 1838, *c.* 163, § 21. *Hanson* v. *Paige,* 3 Gray, 244. *Weston, appellant,* 12 Met. 1. *Agawam Bank* v. *Morris,* 4 Cush. 99. *Somerset Potters' Works* v. *Minot,* 10 Cush. 596, 597. There is no author-ity, even in 14 Barb. 471, for holding that the lease from the ·Ulster Iron Company to Gray made them partners as between themselves. 3 Kent Com. (6th ed.) 27. Story Partn. § 30. Smith's Merc. Law, (1st Amer. ed.) 24. *Hazard* v. *Hazard,* 1 ·Story R. 371. *Rawlinson* v. *Clarke,* 15 M. & W. 292. *Muzzy* v. *Whitney,* 10 Johns. 226. *Perrine* v. *Hankinson,* 6 Halst. 181.

(2.) But this lease did not make them partners, even as re-spected third persons, either by the law of Massachusetts, or the law of New York. *Cutler* v. *Winsor,* 6 Pick. 335. *Denny* v.

Trustees of Catskill Bank *v.* Hooper & others.

*Cabot,* 6 Met. 82. *Bradley* v. *White,* 10 Met. 303. *Judson* v. *Adams,* 8 Cush. 562. *Holmes* v. *Old Colony Railroad, ante,* 58. *Heimstreet* v. *Howland,* 5 Denio, 68. *Burckle* v. *Eckart,* 1 Denio, 337, and 3 Comst. 132. *Post* v. *Kimberly,* 9 Johns. 470. *Vanderburgh* v. *Hull,* 20 Wend. 70. *Mohawk & Hudson Railroad* v. *Niles,* 3 Hill, 162.

(3.) The judgment in New York cannot in any manner preclude the appellants from denying the partnership in this proceeding. For, as appears from what has been already stated, it does not touch the question whether the parties to the lease were partners *inter sese,* and is no evidence of the law of New York, construing a contract made in that state, for it is opposed to the weight of authority there ; it is not binding as a judgment, upon Gray or his representatives, and cannot therefore estop the appellants as against him or them, who were not parties or privies thereto. 1 Greenl. Ev. § 524. It is not an estoppel *in pais ;* because the joinder of the Ulster Iron Company in that suit did not change the condition of Gray or his assignees or other creditors, nor enable the appellants to take any property of his within that jurisdiction, which they could not have taken if the suit had been against him alone. And the bringing of the suit in New York cannot bind the plaintiffs as an admission of the construction of the lease, for an admission of the legal effect of a written instrument is not binding. *Welland Canal* v. *Hathaway,* 8 Wend. 486. *Scott* v. *Clare,* 3 Campb. 236.

(4.) Even if this lease constituted the lessor and lessee actual partners, such partnership was established in another state, and was not, and could not have been, brought within the operation of our insolvent laws. The debt must therefore be considered as a separate debt of Gray, and be classed as such. *Gates* v. *Mack,* 5 Cush. 613. Or, if not entitled to share with his separate debts, it should be paid out of any surplus of his estate, in preference to the debts of H. Gray & Co.

*S. Bartlett & C. B. Goodrich,* for the appellees, besides insisting on the grounds relied on by them in *Bank of British North America* v. *Hooper, ante,* 569, 570; and citing, to the point that the word "superintendent" was mere *descriptio personæ, Pentz*

v. *Stanton*, 10 Wend. 271 ; *Hills* v. *Bannister*, 8 Cow. 31 ; *Brock-way* v. *Allen*, 17 Wend. 40 ; *Fogg* v. *Virgin*, 19 Maine, 352 *Trask* v. *Roberts*, 1 B. Monr. 201 ; *Webb* v. *Burke*, 5 B. Monr. 53 ; Chit. Con. (8th Amer. ed.) 210 *note ;* argued as follows :

If parol evidence is admissible to charge Burtt's principal, either on the drafts, or the consideration thereof, the facts show that he was agent of a partnership, consisting of Gray and the Ulster Iron Company. *Catskill Bank* v. *Gray*, 14 Barb. 371. Creditors of that partnership cannot prove against Gray's separate estate in competition with his separate creditors. *St.* 1838, *c.* 163, § 21. *Somerset Potters' Works* v. *Minot*, 10 Cush. 592. *Twiss* v. *Massey*, 1 Atk. 67. None of the cases cited by the appellants, at least in the New York courts, are opposed to the decision in 14 Barb. 371. If there be a difference, the law of that state is to govern, in determining the effect of contracts made and judgments obtained there. *Betts* v. *Bagley*, 12 Pick. 572. *Wales* v. *Alden*, 22 Pick. 245. *Stebbins* v. *Leowolf*, 3 Cush. 144.

The judgment obtained by the appellants in New York is, by the law of that state, an extinguishment and merger of the original debt, and as such, binding upon the appellants. 2 Rev. Sts. of N. Y. (3d ed.) pt. 3, *c.* 6, tit. 6, art. 1. *Carman* v. *Townsend*, 6 Wend. 206. *Dando* v. *Doll*, 2 Johns. 87. *Bank of Columbia* v. *Newcomb*, 6 Johns. 98. *Taylor* v. *Pettibone*, 16 Johns. 66. *D'Arcy* v. *Ketchum*, 11 How. 165. At common law, a judgment against one of two joint contractors was a bar to a suit against the other. *Ward* v. *Johnson*, 13 Mass. 148. *King* v. *Hoare*, 13 M. & W. 494. The Rev. Sts. *c.* 92, §§ 12, 13, do not cover the case ; and *Shirley* v. *Shattuck*, 13 Met. 256, does not apply, for it does not appear what effect the law of New Hampshire, under which the judgment in question in that case was rendered, gave to such a judgment.

If the appellants might originally have treated this as a separate debt of Gray ; bringing suit and obtaining judgment against the alleged partnership in New York estop them now to treat it as Gray's separate debt. *Philadelphia, Wilmington & Baltimore Railroad* v. *Howard*, 13 How. 336. Story Partn

§ 387. Certainly, after the commencement of proceedings in insolvency, when the rights of all creditors have become fixed, one creditor cannot, by bringing suit in another state against one member of a firm, and obtaining judgment, sever the original debt, and thus affect the principle of distribution, or defeat the rights of private creditors. A creditor, who sues and obtains judgment after the first publication of notice, cannot prove, in insolvency, either the judgment or the original debt. *Sampson* v. *Clark*, 2 Cush. 173. *Woodbury* v. *Perkins*, 5 Cush. 86. *Mann* v. *Houghton*, 7 Cush. 592. *Faxon* v. *Baxter*, 11 Cush. 35.

SHAW, C. J. Under insolvent proceedings, against the joint estate of Horace Gray & Co. and the several estates of Horace Gray and Nathaniel Francis, the two persons composing that partnership at the time of the commencement of those proceedings, the appellants, a banking house in the State of New York, claim to prove their debt against the separate estate of Horace Gray, arising on three unpaid drafts held by them.

The ground upon which the appellants propose to charge the separate estate of Horace Gray, is, that the Ulster Iron Works, at Saugerties, N. Y., were carried on for the sole account of Horace Gray, under a lease from the owners, and that the name of Ulster Iron Works was assumed by Gray alone, simply as a name under which he carried on a sole and separate business. The claim is placed on two grounds: 1. On the bills themselves, in which the drawer has annexed to his name " sup't " or superintendent, indicating on the face of the bill that he acted in a representative capacity; and 2. If not chargeable on the bills, then as upon the original debt or consideration, being a loan of money, in pursuance of an agreement made previously, as shown by the correspondence; that the loan, having been made for the use of the Ulster Iron Works, which were carried on solely for the account of Horace Gray, the loan was in effect made to him and for his use, and that, upon the dishonor of the bills, the holders have a right to fall back upon the original loan, and recover against Gray, as for so much money loaned to him, or paid for his use.

One ground of defence, taken to this claim, goes to both

49 *

aspects or grounds of the claim, and therefore may properly be first considered. This ground is, that the Ulster Iron Works were carried on jointly, by an incorporated manufacturing com-. pany, incorporated by the State of New York, and Horace Gray, as partners, or for their joint account; that they were so dealt with, and so treated by these appellants, who commenced a suit against them as joint debtors, and recovered judgment against them as such upon these very debts; and therefore that a debt against the Ulster Iron Works, either as drawers of the bills, through the agency of Burtt as superintendent, or as for the original loan to the Ulster Works, for which these bills were given, on the ground of their being dishonored, would be a debt, not against Horace Gray alone, but against Gray and the Ulster Company jointly, and so, in either form, cannot be proved as a several debt against Gray.

The first question is, whether this would be a good bar against this claim, if established. That is, supposing a firm, subsisting and carrying on business in another state, and one of the part-ners resides in this commonwealth and carries on business with a distinct partner here, and the latter firm become insolvent here, can a debt, due and owing by said foreign firm, be proved against the separate estate of such insolvent here? We are not aware that this question has been directly decided in this state; we must therefore determine it upon the general prin-ciples on which the insolvent laws are founded, and the con-siderations of policy which govern their application.

Where, as in this case, the original application is made by partners, the proceedings affect the settlement of the joint estate, and also, the separate estates of each, however numerous. In such case, separate accounts are directed by law to be kept, both of debts and assets, of the partnership and each of the partners, and ultimately the joint estate is applied to the joint debts, and the separate estate of each to his separate debts, with provisions in case of a surplus. *St.* 1838, *c.* 163, § 21.

The same rule must apply, in case the same individual hap-pen to be a partner in two or more distinct firms or partnerships, and of course to the separate estates of the individuals com-

posing each of such partnerships. The statute does not, in terms, apply to such a case; but the principles on which the statute is founded require such application to carry out the intent. This or a very similar application of the law was held in *Barclay* v. *Phelps*, 4 Met. 397. In that case, Phelps, the insolvent, was in actual partnership in one firm, and had recently been a partner in another, the affairs of which were still unsettled; and it was held, that separate accounts must be kept, it not being necessary to decide how the assets should be ultimately distributed.

But in all those cases, all the parties had their domicils here, the partners were citizens of this commonwealth, and both the persons and the effects were within the jurisdiction of the laws of this commonwealth. The joint property of the firm, or of each firm, if more than one, and of each separate member, was brought under the operation of the laws of this commonwealth; it passed by the assignment to the assignees, and stood as a fund for the payment of the joint and several debts, according to established rules, regulating such distribution here.

But the court are of opinion, that, where a partnership has been carried on in another state, of which some one inhabitant of this commonwealth is a member, and such inhabitant becomes insolvent, under the law of this commonwealth, the joint debts of the foreign partnership cannot be proved against the separate estate of the insolvent debtor here, so as to enable such creditors to claim in competition with the creditors here The courts of this state, under the laws of this commonwealth, have no jurisdiction over the joint estate of such debtor in another state, nor over the person nor persons of the other joint debtor or debtors. The joint property of such foreign partnership forms no part of the funds to be applied to the payment of any debts in this commonwealth. The rule, founded in principles of equity, as well as expediency and practical utility, of making joint assets liable to joint debts, and separate property to separate debts, could not be applied. To allow such creditor of a foreign firm to come in competition with the separate creditors, in the distribution of the separate property of the partner,

would be inequitable, and give such a creditor an unjust advan-tage. It would be, to allow to such creditors the chance of taking and dividing the whole of the joint property of the foreign partnership ; and even if there were a large surplus after payment of the foreign partnership debts in full, it could not be brought into the funds of the separate debtor here, as in case of a domestic partnership.

The court are therefore of opinion that, if Gray was charge-able jointly with the Ulster Company, and the debt due to the Catskill Bank was the joint debt of Gray and the Ulster Com pany, it cannot be proved as a debt against the separate estate of Gray, and take an equal dividend with his separate creditors.

2. The next question is, whether the act of William Burtt, " superintendent," (supposing it be carried out according to the abbreviated description " sup't.") as the superintendent of the Ulster Iron Works, bound Horace Gray alone, or Horace Gray jointly with the Ulster Iron Company.

Were it to be determined by the terms of the lease submitted as part of the case, whether, by force of such lease and the acts done under it, Gray and the Ulster Company were partners *inter sese*, so as to be chargeable, it might be a question of some difficulty ; and it is contended that the judgment of the supreme court of New York, 14 Barb. 471, was not correctly decided. But it does not depend wholly on the lease. Burtt professed to be the superintendent of the Ulster Iron Works. These works were carried on at the place indicated by their act of incorpora-tion, and it was the kind of business which they were incor-porated to carry on. In the correspondence which preceded the loan by this bank, and which is relied upon by the appellants, as proving that Burtt acted as an agent for these works, there is nothing to show that the works were not for the account as well as in the name of the company. By the first proposal of July 30th 1847, made by Russell, for making these loans, they are informed that the Ulster Iron Company, of which Horace Gray of Boston is principal owner, are doing a heavy business, &c. So Burtt, in his direct application to the bank, speaks of " us " and " our payments," and signs himself " Superintendent Ulster

Iron Works." There might therefore be much ground for holding that the Ulster Iron Company held themselves out as parties carrying on the business for which they were chartered, and that in dealing with Burtt, as agent, the Catskill Bank gave credit to the company as well as to Gray, and that this consideration may have had its influence with the court which rendered the judgment charging them as partners. But were we required to decide the case upon these grounds, we should desire to give more direct attention to the true construction of the lease, as constituting the terms and ascertaining the nature of the relation between these parties, and also to the facts under which the supposed debt was contracted.

But we have not thought it necessary to proceed to this critical examination, because we are of opinion that these claimants are bound by the judgment which they have recovered, and cannot now treat the supposed debt as the separate debt of Horace Gray.

It appears that, some time after the commencement of these insolvent proceedings, the Catskill Bank commenced a suit against Gray and the Ulster Company jointly; that Gray was not served with process; that the company were served, appeared, and contested their liability; but judgment was rendered against them jointly with Gray, as for a joint debt.

The legal effect and operation of such a judgment must of course be decided by the laws of New York. In that state, statutes have long been in force regulating suits on joint contracts, where all the joint debtors cannot be served with process, and do not appear and answer, and regulating the judgment which shall be rendered in such cases. See 2 Rev. Sts. of N. Y. (3d ed.) pt. 3, *c.* 6, tit. 6, art. 1. This has been revised, with some alterations, from a statute dating back as far as 1806. This statute requires that, in such suit, a joint judgment shall be entered, as well against the defendant not served and not appearing, as against those who appear. The judgment shall bind all the joint property and effects, to the same effect as if all had appeared; but it shall not bind the separate property, nor be used as a warrant for the arrest of the person, or the

seizure of the separate property of the party not summoned; and the statute requires that an indorsement to that effect be made on any execution issued on such judgment.

The case of *Carman* v. *Townsend*, 6 Wend. 206, is instructive as to the nature and character of this statute regulating joint actions and judgments. It holds that a new action may be brought on such judgment against the party not served with process ; that the declaration shall be debt, as upon a judgment, and setting out the special facts ; and such defendant, being then for the first time judicially called to answer, may, by proper pleading, traverse his liability, and avail himself of the same grounds of defence as he might have done in the original action, putting the burden of proof on the creditor to prove his debt; the judgment, in this respect, having been obtained in his absence, being no proof against him. In the court of errors, the chancellor, in giving the opinion which was adopted as the unanimous judgment of the court, begins by saying : " The plaintiff in error is unquestionably right in his first point, in supposing that the first judgment was an extinguishment or merger of the original indebtedness, so that no action could be sustained against either of the defendants on the original promises. If any action could be sustained against the defendant not arrested in the original suit, it must be, in form, an action of debt, founded on the judgment." 6 Wend. 209..

This statute was considerably modified in 1830, and a case, decided under it afterwards, determined that a judgment was not *prima facie* evidence against the defendant not served with process, in a subsequent suit brought against him. Some of the judges still considered that, under the statute, the plaintiff might have an action of debt on the statute, setting out the specia. circumstances. *Mervin* v. *Kumbel*, 23 Wend. 293.

In a more recent case, *Oakley* v. *Aspinwall*, 4 Comst. 514, the law was much discussed, and these statutes were reviewed. It was a critical question upon the construction of a bond given upon dissolving an attachment, to be responsible for the debts for which such attachment was levied. The New York statute required that the attaching creditor should make a true state-

ment of the ground of his demand, and make affidavit of it. The creditor described it as a debt arising on a judgment. The proof was of a judgment on the joint debtor act of New York against two, one of whom was an inhabitant of a foreign country, who was not served with process and had never appeared, and who had no property jointly with the other defendant, to be reached or affected by the laws of New York. It was decided by a divided opinion in the court of appeals, that that was not a debt arising on a judgment as against the absent defendant and therefore that the debt was not truly described.

But we do not think the ground relied on in this case is affected by any of the controverted points discussed in those cases. The ground is that the appellants treated the contracts created by drawing these bills, as joint contracts; brought their action against both Gray and the Ulster Company, and the only reason why Gray was not a party defendant was that he was not within the jurisdiction of the State of New York. The same facts and principles on which the court in New York rendered their judgment would have required them to render a judgment binding and conclusive against Gray, if he had been a party.

The effect of this qualified judgment was to bind all the stock and personal property, held and used in and about the carrying on of the Ulster Iron Works, as partnership effects. These may have been small or considerable. The judgment is still binding upon the Ulster Company ; and if the claim of the appellants should be allowed here against the separate estate of Gray, they would still hold a valid demand against the Ulster Company as a joint debt.

It is not the purpose, and we think not the effect, of such a judgment in New York to work a severance, but rather the contrary. It may not be strictly and technically true that the original cause of action is merged by such a judgment, as against the defendant not served ; because the plaintiff may declare, in the subsequent action, on the original cause of action, as still a joint cause of action ; and the defendant against whom the previous valid judgment was rendered may be joined in such

new action, if he can be served with process, and a complete joint judgment be rendered against both. It is therefore still a joint debt.

The case of *Gates* v. *Mack*, 5 Cush. 612, was cited as an instance where a debt originally joint was admitted to proof under separate insolvent proceedings against one of the debtors That was so; but it was a case where a severance had been wrought by operation of law. In insolvency against both, this debt was proved; one obtained his certificate of discharge, but the other did not. On a second insolvency of the latter, the balance of the former debt was admitted to proof as his several debt. But the reason is obvious. By the common law, where one of two or more joint debtors obtains a special discharge by operation of law, not discharging the debt, it is a severance, and the creditor has his remedy against the other. But in the particular case cited, there is a more decisive reason, an express provision of statute. By the original insolvent law, *St.* 1838, *c.* 163, § 7, it is provided that no discharge under that act shall release or discharge any person who may be liable for the same debt as a partner, joint contractor, indorser, surety, or otherwise. This puts the point beyond doubt, but is no authority for the appellants in this case.

The court are of opinion that the claims of the appellants were not provable against Gray's separate estate, and that they were rightly rejected by the master. *Decree affirmed.*